# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| TYRRAN SMITH and TATRA BRADSHAW, individually and as administrators of the ESTATE OF DENISE BRADSHAW, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | C.A. N21C-08-245 JRJ |
| NELI SERAFIMOVA, M.D., WESLEY EMMONS, M.D., JOHN D'AMBROSIO, D.O., MICHAEL VAN WINKLE, D.O., and ST. FRANCIS HOSPITAL, INC., | ) ) ) ) ) ) | |
| Defendants. | ) | |

Date Submitted:  April 18, 2024
Date Decided:  April 22, 2024

## OMNIBUS ORDER

Upon consideration of Defendants',[1] Drs. Neli Serafimova ("Dr. Serafimova") and Michael Van Winkle's ("Dr. Van Winkle") Motion for Summary Judgment,[2] Dr. John D'Ambrosio's ("Dr. D'Ambrosio") Motion in *Limine* and Motion for Summary Judgment,[3] Drs. Serafimova and Van Winkle's Motion in

---

[1] Defendant, Dr. Wesly Emmons has since been dismissed from the case. *See* Trans. ID 82598120. Since the filing of these motions, all other Defendants have joined each other's motions. *See* Trans. ID 72483876, 72486130, 72495368, 72516919.

[2] Defs.' Br. in Supp. of Drs. Serafimova & Van Winkle's Mot. for Summ. J., Trans. ID 72483352 (March 11, 2024).

[3] Defs.' Br. in Supp. of Dr. D'Ambrosio's Mot. in Lim. and Mot. for Summ. J., Trans. ID 72474665 (March 11, 2024).

*Limine* to "Preclude Unqualified Expert Causation Testimony Related to Any Surgical or Embolization Procedure,"[4] Drs. Serafimova and Van Winkle's Motion in *Limine* to "Preclude David Miller, M.D. from Offering Any Expert Testimony,"[5] Drs. Serafimova and Van Winkle's Motion in *Limine* to "Limit Plaintiffs' Expert Opinions Beyond their Expert Reports,"[6] Plaintiffs' Responses thereto,[7] and the record in this case, **IT APPEARS THAT:**

(1)     Plaintiffs filed this medical negligence action after their mother, Denise Bradshaw ("Ms. Bradshaw"), died on April 9, 2020, during her stay at St. Francis Hospital.[8]  Plaintiffs allege that moving Defendants' negligence proximately caused the death of Ms. Bradshaw.[9]  Plaintiffs filed suit in Superior Court on August 27, 2021.[10]  Defendants proceeded to remove the case to Federal District Court in October 2021,[11] but the case was remanded back to the Superior Court on September

---

[4] Defs.' Br. in Supp. of Drs. Serafimova & Van Winkle's Mot. in Lim. to Preclude Unqualified Expert Causation Test., Trans. ID 72494861 (March 12, 2024).

[5] Defs.' Br. in Supp. of Drs. Serafimova & Van Winkle's Mot. in Lim. to Preclude Dr. Miller, Trans. ID 72495367 (March 12, 2024).

[6] Defs.' Br. in Supp. of Drs. Serafimova & Van Winkle's Mot. in Lim. to Limit Pls.' Experts' Op., Trans. ID 72495652 (March 12, 2024).

[7] Pls.' Resp. to Defs.' Serafimova & Van Winkle's Mot. for Summ. J., Trans. ID 72649062 (April 1, 2024); Pls.' Resp. to Def.'s D'Ambrosio's Mot. for Summ. J., Trans. ID 72650577 (April 1, 2024); Pls.' Resp. to Defs.' Serafimova & Van Winkles' Mot. in Lim. to Preclude Unqualified Expert Causation Test., Trans. ID 72705009 (April 9, 2024); Pls.' Resp. to Defs.' Serafimova & Van Winkle's Mot. in Lim. to Preclude Dr. Miller, Trans. ID 72705320 (April 9, 2024); Pls.' Resp. to Defs.' Serafimova & Van Winkle's Mot. in Lim. to Limit Pls.' Experts' Op., Trans. ID 72705640 (April 9, 2024).

[8] Compl., Trans. ID 66885385 (Aug. 27, 2021).

[9] *See generally* Compl.

[10] *Id.*

[11] Notice of Removal, Trans. ID 67015492, 67018401, 67019322, 67106701, 67059932.

19, 2022.[12] Defendants then moved to dismiss the action under the Public Readiness and Emergency Preparedness Act ("PREP Act") on January 12, 2023, which was denied by the Court on May 18, 2023.[13] Trial is scheduled to begin on April 29, 2024.[14]

(2) Between March 11, 2024, and March 12, 2024, Defendants filed a series of Motions in *Limine* and Motions for Summary Judgment. Herein lies the Court's decisions on all outstanding motions.

(3) The Court generally notes that the Delaware courts have embraced the "jury's exclusive providence to determine issues of credibility."[15] Throughout trial, experts undergo vigorous cross-examination, and it is ultimately the jury's job to resolve any conflicts in testimony that arise.[16] While the trial judge acts as a "gatekeeper" to decide whether the expert testimony "has a reliable basis in the knowledge and experience of [the relevant] discipline," the Court will not exclude

---

[12] Trans. ID 69267916.

[13] *See Smith v. Serafimova*, 2023 WL 3582388 (Del. Super. May 18, 2023).

[14] Stip. and Order Amend. Tr. Scheduling Order, Trans. ID 72007896 (Feb. 9, 2024). Jury selection will occur on April 23, 2024.

[15] *Baylis v. Wilmington Medical Center, Inc.*, 1989 WL 114330, at *1 (Del. Supr. Apr. 24, 1984).

[16] *Id.*

an expert's testimony because it is inconsistent with that of another.[17]  Instead, the jury will be free to accept or reject any or all of the expert testimony presented.[18]

**A. Defendants' Motions in *Limine*[19]**

(4)  Defendants move to preclude Plaintiffs' expert Dr. David Miller ("Dr. Miller") from (1) offering "unqualified expert causation testimony related to any surgical or embolization procedure"; (2) "any expert testimony"; (3) to limit any testimony given solely to his expert report; and (4) to preclude him from testifying because "his methodology is flawed" and he cannot offer an "opinion as to interventional radiology."[20]

(5)  Dr. Miller is a graduate of Washington University School of Medicine.[21]  He is trained in Internal Medicine, Infectious Disease, and General Surgery.[22]  Additionally, he has served as an Associate Physician and

---

[17] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). The "[C]ourt retains considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Bowen v. E.I. DuPont de Nemours & Co., Inc.*, 906 A.2d 787, 795 (Del. 2006) (quoting *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137 152 (1999) (internal citation omitted).

[18] *Beatty v. Smedley*, 2003 WL 23353491, at n.10 (Del. Super. Mar. 12, 2003) (citing *DeAngelis v. Harrison*, 1992 WL 207257, at *1 (Del. Super. Aug. 12, 1992)).

[19] Throughout Defendants' motions they argue for the exclusion of Dr. Bailey's testimony, any reference to Dr. Bailey has become **MOOT** since Plaintiffs no longer intend to call Dr. Bailey to the stand.

[20] *See* Defs.' Br. in Supp. of Drs. Serafimova & Van Winkle's Mot. in Lim. to Preclude Unqualified Expert Causation Test; Defs.' Br. in Supp. of Drs. Serafimova & Van Winkle's Mot. in Lim. to Preclude Dr. Miller; Defs.' Br. in Supp. of Drs. Serafimova & Van Winkle's Mot. in Lim. to Limit Pls.' Experts' Op., Defs.' Br. in Supp. of Dr. D'Ambrosio's Mot. in Lim. and Mot. for Summ. J.

[21] Compl., Ex. A (Dr. Miller's Affidavit of Merit and Curriculum Vitae).

[22] *Id.*

Instructor/Lecturer at Harvard Medical School.[23] Dr. Miller's current practice is in General Internal Medicine and Primary Care at Massachusetts General Hospital.[24] Dr. Miller is a General Internist with Harvard teaching credentials and University of Pennsylvania surgical training.[25]

(6) Defendants first argue that Dr. Miller should be precluded from offering testimony about Dr. Van Winkle's "failure" to "strong-arm radiology into performing an embolization procedure on Ms. Bradshaw."[26] Defendants aver that without expert causation testimony, such testimony about Dr. Van Winkle's purported failures is irrelevant.[27] Dr. Miller, in his expert report, explains that defendant doctors were "required" to react more aggressively the morning and evening of April 8, 2020.[28] During his deposition testimony, he offered the following causation testimony, "[i]t should have been clear to the team that was taking care of her overnight that this patient was dying and that it required persistence . . . but I'm saying that in totality, there was very significant delays in the appropriate care of this patient. And had those delays been avoided, I think the

---

[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] Defs.' Br. in Supp. of Drs. Serafimova & Van Winkle's Mot. in Lim. to Preclude Unqualified Expert Causation Test. at ¶ 16.
[27] *Id.* at ¶ 24.
[28] Pls.' Resp. to Defs.' Serafimova & Van Winkles' Mot. in Lim. to Preclude Unqualified Expert Causation Test. at ¶ 10. *See id.*, Ex. A (Dr. Miller's Expert Narrative).

patient would probably still be alive."[29] Dr. Miller's causation testimony is that if the defendant doctors had intervened earlier, the bleeding could and would have been stopped, and ultimately Ms. Bradshaw would have survived. As gatekeeper, the Court declines to exclude the testimony concerning Dr. Van Winkle's alleged failures and leaves it to the finder of fact to determine what weight, if any, to give to Dr. Miller's causation opinions. Defendants' Motion in *Limine* to "Preclude Unqualified Expert Causation Testimony Related to Any Surgical or Embolization Procedure" is **DENIED**.

(7) Next, Defendants argue that Dr. Miller should be precluded from offering any testimony regarding a breach in the standard of care during the early stages of the pandemic because he was not working as a doctor during that time.[30] From March to April 2020, Dr. Miller was transitioning from his position as Associate Chief Medical Officer at Tufts Medical Center to the Mass. General Medical Group.[31] The gist of Plaintiffs' claims against Defendants is that Ms. Bradshaw died because Defendants failed to timely address Ms. Bradshaw's bleeding.[32] Dr. Miller's deposition testimony reflects his opinion that earlier

---

[29] Pls.' Resp. to Defs.' Serafimova & Van Winkles' Mot. in Lim. to Preclude Unqualified Expert Causation Test. at ¶ 10, Ex. B (Dr. Miller's Deposition) at 138:2-23.
[30] Defs.' Br. in Supp. of Drs. Serafimova & Van Winkle's Mot. in Lim. to Preclude Dr. Miller at ¶¶ 8, 12.
[31] Pls.' Resp. to Defs.' Serafimova & Van Winkle's Mot. in Lim. to Preclude Dr. Miller at ¶ 10. During that transition period Dr. Miller reviewed medical literature which is common practice in the medical field. *Id.* at 5, n.7.
[32] *See generally* Compl.

intervention could have stopped the bleeding.[33] Dr. Miller's "break" in seeing patients during COVID does not extinguish his knowledge, experience, and expertise in internal medicine, and Defendants will have ample opportunity to cross-examine him on this and many other points. The jury will decide what weight, if any, to give this evidence.[34] Defendants' Motion in *Limine* to "Preclude Dr. Miller from Offering Any Expert Testimony" is **DENIED**.

(8) Defendants' move to preclude Dr. Miller from offering any expert testimony regarding his criticisms of Defendant doctors' use of Protamine.[35] Defendants argue that because Dr. Miller did not specifically mention Protamine in his report, his opinions regarding it should be barred at trial.[36] Defendants have been on notice regarding Dr. Miller's opinion (and criticism) on the use of Protamine since his deposition December 21, 2023.[37] Defendants have known for a year that one of the overarching issues in the case was the failure to address the "anticoagulation" in a timely manner.[38] In addition to Dr. Miller's deposition

[33] Pls.' Resp. to Defs.' Serafimova & Van Winkles' Mot. in Lim. to Preclude Unqualified Expert Causation Test. at ¶ 10, Ex. B ("Dr. Miller's Deposition") at 138:2-23.
[34] *See McKenzie v. Blasetto*, 686 A.2d 160, 161 (Del. 1996).
[35] Defs.' Br. in Supp. of Drs. Serafimova & Van Winkle's Mot. in Lim. to Limit Pls.' Experts' Op. at ¶¶ 9, 17.
[36] Pls.' Resp. to Defs.' Serafimova & Van Winkles' Mot. in Lim. to Preclude Unqualified Expert Causation Test.
[37] Pls.' Resp. to Defs.' Serafimova & Van Winkles' Mot. in Lim. to Preclude Unqualified Expert Causation Test., Ex. B.
[38] Pls.' Resp. to Defs.' Serafimova & Van Winkle's Mot. in Lim. to Limit Pls.' Experts' Op. at ¶ 10; *Id.*, Ex. B (Dr. Miller's Expert Narrative) at 3-4.

testimony, Dr. Bailey discussed this and offered opinions on this same issue during his deposition.[39] Defendants have had adequate notice and time to prepare a defense to Dr. Miller's testimony concerning Protamine, and the Court declines to exclude it. Defendants Motion in *Limine* to "Limit Plaintiffs' Experts' Opinions Beyond their Export Reports" is **DENIED**.

(9) Last, Defendants attempt to exclude Dr. Miller's testimony pertaining to the care administered by Dr. D'Ambrosio.[40] They argue that if Dr. Miller is precluded from testifying against Dr. D'Ambrosio, then Plaintiffs cannot establish causation, so summary judgment should be granted.[41] As stated above, the Court finds Dr. Miller's experience and qualifications sufficient to allow him to testify as an expert for Plaintiffs. But, Defendants argue that because Dr. Miller is not specifically qualified in Internal Radiology ("IR"), he cannot render a causation opinion that had Ms. Bradshaw been moved to IR earlier, she would have survived.[42] The Court declines to exclude Dr. Miller as an expert simply because he does not specialize in IR. Based on the record, he has experience referring to and interacting with IR, following protocols (and instructions) set by IR, requesting IR bedside consults depending upon the deterioration of the patient, teaching medical students

---

[39] Defs.' Br. in Support of Dr. D'Ambrosio's Mot. in Lim. and Mot. for Summ. J.
[40] *Id.*
[41] *Id.*
[42] *Id.*

on basic medical processes like embolization, and he works in a hospital as a General Internalist.[43] Defendants' Motion *in Limine* and Motion for Summary Judgment is **DENIED**.

### B. Summary Judgment Motions

(10)   Defendants move for summary judgment based on the alleged inadequacy of Dr. Miller's expert testimony against Dr. D'Ambrosio.[44] Because the Court finds Dr. Miller is qualified to testify as an expert against Dr. D'Ambrosio, the Defendants' Motion for Summary Judgment as to Dr. Miller is **DENIED AS MOOT**.

(11)   Defendants also move for summary judgment on the basis of the PREP Act.[45] Parties agreed that the question of whether PREP Act immunity applies to Defendants in this case is a legal question of statutory interpretation.[46] This is not an issue of fact for the jury. As the Court articulated during its pretrial conference, it does not interpret the PREP Act to be as expansive as Defendants would like. As the Court noted in *Hansen I*, the purpose of the PREP Act was to "ensure that drug manufactures will not be sued should the vaccine or other government-ordered countermeasure turn out to be defective or harmful."[47] The Court noted in *Hansen*

---

[43] Compl., Ex. A; Dr. Miller's Deposition at 138:02-144:15.
[44] Defs.' Br. in Support of Dr. D'Ambrosio's Mot. in Lim. and Mot. for Summ. J.
[45] Defs.' Br. in Supp. of Drs. Serafimova & Van Winkle's Mot. for Summ. J.
[46] *Id*.; Pls.' Resp. to Defs.' Serafimova & Van Winkle's Mot. for Summ. J.
[47] *Hansen v. Brandywine Nursing and Rehabilitation Center, Inc.*, 2023 WL 587950, at *3 (Del. Super. Jan. 23, 2023) ("*Hansen I*").

*II* that "immunity does not extend to standard infections disease protocols that were or were not followed."[48]  Similarly, immunity does not extend to standard internal bleeding protocols that were—or were not—timely administered or timely reversed. For the reasons stated at the pre-trial conference, Defendants' Motion for Summary Judgment is denied, and the Court finds as a matter of law based on statutory interpretation that Defendants are not insulated from allegations of medical negligence under the PREP Act.[49]  Therefore, Defendants' Motion for Summary Judgment is **DENIED**.

   **THEREFORE, IT IS HEREBY ORDERED** that Defendants' Motions in *Limine* and Motions for Summary Judgement are **DENIED**.

   **IT IS SO ORDERED**.

           /s/ Jan R. Jurden

           Jan R. Jurden, President Judge

cc:  Prothonotary

---

[48] *Hansen v. Brandywine Nursing and Rehabilitation Center, Inc.*, 2023 WL 2199610, at *3 (Feb. 24, 2023) ("*Hansen II*").

[49] *See Hansen I*, 2023 WL 587950, at *8 ("the PREP Act's 'covered countermeasures' did not establish a new defense to [ordinary negligence] claims, nor did they foreclose [on defendants] from showing that [they] acted within the standard of care at the time the Plaintiffs contracted COVID-19.") *See Roebuck v. Mayo Clinic*, 256 Ariz. 161, 298 (Ariz. Ct. App. Sept. 19, 2023) (holding the PREP Act did not provide immunity for complications arising from an ABG test ordered by doctors to assess and treat a patient for COVID-19).